Ronald David ALFORD, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–98–619–CR.

Court of Appeals of Texas,
Fort Worth.

July 20, 2000.

Lloyd D. Odle, Lewisville, for Appellant.

Bruce Isaacks, Crim. Dist. Atty., Yolanda M. Joosten, Lori Moranie, Gracie Rodriquez, Asst. Dist. Atty., Denton, for Appellee.

PANEL B: LIVINGSTON and HOLMAN, JJ.; JOHN HILL, J. (Retired, Sitting by Assignment).

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

JOHN HILL, Justice (Retired).

Pursuant to Texas Rule of Appellate Procedure 50, we have reconsidered our prior opinion upon the State's petition for discretionary review. Our opinion and judgment of April 20, 2000 are withdrawn and the following are substituted to address the application of *Dickerson v. United States*, —— U.S. ——, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

Appellant Ronald David Alford, Jr. appeals his conviction by a jury of the offense of driving while intoxicated. The court assessed his punishment at 90 days in the Denton County Jail, probated for two years, and a $500 fine. He contends, among other things, that the court erred in denying his request to suppress the statements made by him while in custody, through interrogation, without protection of *Miranda* warnings and in denying his request for directed verdict. We reverse and remand because the trial court erred in denying Appellant's request to suppress statements made by him in response to interrogation while he was in custody for purposes of *Miranda*.

Appellant urges in point four that the trial court erred in denying his request for directed verdict. Such a point of error constitutes an assertion that the evidence is legally insufficient to support the verdict. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied*, 498 U.S. 1301, 111 S.Ct. 902, 112 L.Ed.2d 1026 (1991). In evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Ovalle v. State*, 13 S.W.3d 774, 777 (Tex.Crim.App.2000).

Officer Paul Warren of the Lewisville Police Department saw Appellant's truck on the interstate. He pulled behind Appellant. According to Warren, Appellant's truck was passing cars and weaving in and out of lanes. Warren activated his emergency lights. Appellant slowed down, but did not stop. After following the truck for a while, Warren turned on his siren. He followed the truck into the Hickory Creek–Lake Dallas area. Appellant exited the highway at the Hickory Creek–Lake Dallas exit and continued on the service road. When the service road split into another street, Appellant veered onto it before turning into a mobile home park. He drove to the back of the park and stopped in front of a trailer.

After stopping, Appellant did not heed Warren's request to get out of the truck. Warren got Appellant out of his truck, put him on the ground, and handcuffed him because he did not want him to run or fight. After handcuffing Appellant, Warren stood him up by his truck. Appellant had alcohol on his breath and his eyes were red, bloodshot, glassy, and had dilated pupils. Appellant swayed and staggered, and was argumentative and combative. When Officer Robert Feagins arrived on the scene six or seven minutes after

Appellant was stopped, he asked Appellant, who had not been warned of his rights under *Miranda,* if he had been drinking. Appellant responded that he had six beers and that he had come from the Dallas Cowboys football game.

█ We hold that the evidence is legally sufficient to support the conviction. Alford indicates that the evidence is insufficient in light of his argument that portions of the evidence should not have been admitted. However, in determining the sufficiency of the evidence, we must consider all of the evidence, both admissible and inadmissible. *See Johnson v. State,* 967 S.W.2d 410, 412 (Tex.Crim.App.1998). We overrule point four.

Appellant contends in point one that the court erred in denying his request to suppress the statements made by him while in custody, through interrogation, without protection of *Miranda* warnings. In *Miranda,* the United States Supreme Court held that the State may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. The Court stated that custodial interrogation meant questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

Subsequently, the Court held that this rule may be applicable in misdemeanor traffic cases. *See Berkemer v. McCarty,* 468 U.S. 420, 429, 104 S.Ct. 3138, 3145, 82 L.Ed.2d 317 (1984). However, the Court held that persons temporarily detained pursuant to an ordinary traffic stop are not "in custody" for the purposes of the rule announced in *Miranda. See id.* at 440, 104 S.Ct. at 3150. The basis for the opinion is the fact that the typical traffic

stop is more analogous to a *"Terry* stop"[1] than to a formal arrest. *See id.* The Court further held that if a motorist who has been detained pursuant to a traffic stop is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda. See id.*

█ Two distinct inquiries are essential: (1) what the circumstances were surrounding the interrogation and (2) whether a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). The ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *See id.* We make this determination de novo. *See Jordy v. State,* 969 S.W.2d 528, 532 (Tex.App.— Fort Worth 1998, no pet.).

█ Based upon these principles as announced by the United States Supreme Court, we conclude that under the circumstances as we have described them above, Appellant was in custody for purposes of the application of *Miranda.* Consequently, it was error for the trial court to admit into evidence his response to the officer's question in the absence of the warning required by *Miranda. See United States v. Perdue,* 8 F.3d 1455, 1466 (10th Cir. 1993); *United States v. Smith,* 3 F.3d 1088, 1098 (7th Cir.1993), *cert. denied,* 510 U.S. 1061, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *United States v. Henley,* 984 F.2d 1040, 1042 (9th Cir.1993); *Jordy,* 969 S.W.2d at 532.

The State principally relies upon the cases of *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984); *United States v. Quinn,* 815 F.2d 153, 158 (1st Cir.1987); *State v. Stevenson,* 958 S.W.2d 824, 829 (Tex.Crim. App.1997); *Zayas v. State,* 972 S.W.2d 779, 789 (Tex.App.—Corpus Christi 1998, pet.

---

1. *Terry v. Ohio,* 392 U.S. 1, 28, 88 S.Ct. 1868,     1883, 20 L.Ed.2d 889 (1968).

ref'd.); and *Rhodes v. State*, 913 S.W.2d 242, 248 (Tex.App.—Fort Worth (1995), *aff'd*, 945 S.W.2d 115 (Tex.Crim.App.), *cert. denied*, 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997). We find all of these cases to be distinguishable.

In *Rhodes*, this court held that the handcuffing of a suspect does not necessarily transform an investigative detention into a formal arrest. *See Rhodes*, 913 S.W.2d at 249. We held that under certain circumstances it might be reasonable to handcuff a suspect during an investigative detention. *See id.* On appeal, the Texas Court of Criminal Appeals agreed, affirming Rhodes's conviction. *See Rhodes*, 945 S.W.2d at 118. The court held that such an investigative stop was not necessarily an arrest requiring probable cause. *See id.* In this case, the issue is not whether an investigative stop had advanced to an arrest; rather, the issue is whether the circumstances presented are those of an ordinary traffic stop or whether, after such a stop, Appellant was subjected to treatment that resulted in his being in custody for practical purposes and whether a reasonable person in these circumstances would have felt that he or she was not at liberty to terminate the interrogation and leave. It is true, as we have noted earlier, that the United States Supreme Court in *Berkemer* compared the ordinary traffic stop to a *"Terry* stop." However, it meant no more than to state that most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*. *See Berkemer*, 468 U.S. at 439 n. 29, 104 S.Ct. at 3150 n. 29.

*Zayas* is distinguishable because in that case the defendant was questioned by the officer after he was handcuffed and after he had been given a *Miranda* warning. *See Zayas*, 972 S.W.2d at 784. In neither *Berkemer, Quinn,* nor *Stevenson* was the defendant handcuffed and put on the ground before questioning. *See Berkemer*, 468 U.S. at 423–24, 104 S.Ct. at 3141–42; *Quinn*, 815 F.2d at 154; *Stevenson*, 958 S.W.2d at 825–26.

The State contends that even if the trial court's determination regarding the admissibility of his answer to the officer's question was error, it was harmless due to overwhelming evidence of his guilt. In making a harmless-error analysis, we must first determine whether the error is constitutional. *See* Tex.R.App. P.44.2(a), (b). A constitutional error within the meaning of rule 44.2(a) is an error that directly offends the United States Constitution or the Texas Constitution without regard to any statute or rule that might also apply. *See Tate v. State*, 988 S.W.2d 887, 890 (Tex.App.—Austin 1999, pet. ref'd). With respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required because a mere misapplication of the rules of evidence is not constitutional error. *See id.* The United States Supreme Court has recently held that, in *Miranda*, it laid down concrete constitutional guidelines for law enforcement agencies and courts to follow. These guidelines established that the admission of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with the constitutionally-required *Miranda* warnings. *See Dickerson*, 120 S.Ct. at 2333–34. We have held in this case that the trial court did not follow that constitutional guideline. We perceive from *Dickerson* that the ruling to exclude the testimony was constitutionally required; consequently, we hold that the error is constitutional error.

Rule 44.2(a) of the Texas Rules of Appellate Procedure provides that where, as here, the appellate record in a criminal case reveals constitutional error that is subject to constitutional review, we must reverse a judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. Tex.R.App. P. 44.2(a); *see Jordy*, 969 S.W.2d at 532–33.

Warren testified that Appellant was weaving and swerving in and out of the

lanes of traffic, he was speeding, he threw a beer can into the bed of the truck, he smelled of alcohol, his eyes were bloodshot and glassy, he swayed when he walked, and he needed support to stand. Feagins testified that he detected a mild odor of alcohol on Appellant's breath, his eyes were glassy and bloodshot, and his balance was unsteady. He also stated that his opinion as to Appellant's state of intoxication was based on the fact that Appellant had refused to stop for Warren, the fact that he was combative with Warren, and field sobriety tests that Appellant performed at the scene.

Warren related that he found a beer can in the bed of Appellant's truck and four unopened cold beers in a cooler within the cab of the truck. One officer on duty at the Lewisville jail testified that Appellant showed signs of intoxication, including alcohol on his breath and unsteady balance. That same officer testified that Appellant did not follow instructions during the intoxilyzer test. That officer and another officer both indicated that Appellant was uncooperative. One jail officer could not recall any smell of alcohol on Appellant, nor any loss of balance. In closing argument, the prosecutor emphasized Appellant's statements more than other factors of intoxication.

■ Based upon the record, we are unable to determine, beyond a reasonable doubt, that the admission of Appellant's answer to the officer's questions did not contribute to his conviction. We held a similar statement improperly admitted to be harmless in *Jordy*. In that case the defendant, while in custody for the purpose of *Miranda*, responded "A lot" when asked how much he had been drinking. *Jordy*, 969 S.W.2d at 528. We find the case to be distinguishable because in that case the appellant himself testified that he had drunk a six-pack of beer the same evening, while a paramedic, who responded to the scene when the defendant said he needed medical attention, testified that the defendant told him he had drunk twelve beers. In this case, there was no other testimony concerning the quantity of alcohol Appellant had consumed. We sustain point one. In view of our determination of point one, we need not determine the remaining points. We reverse the judgment and remand this cause for a new trial.