Affirmed in Part and Reverse and Remand in Part and Opinion filed
February 27, 2003









Affirmed in Part and Reverse and Remand in Part and
Opinion filed February 27, 2003.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01234-CR

____________

 

JUSTIN DANIEL LINDSAY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 852,523

 



 

O P I N I O N

Appellant pleaded guilty to aggravated robbery, and the jury
assessed punishment at seventy-five years in the Texas Department of Criminal
Justice, Institutional Division and a fine of $10,000.00.  On appeal, appellant raises eight
issues.  We reverse the punishment based
on appellant=s final issue that the trial judge
erred in failing to charge the jury on the definition of “criminal
responsibility,” and we remand the case for a new punishment hearing.








FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his accomplice, Roger, who were looking for
cash and narcotics, decided to rob an acquaintance=s house.  They obtained sawed-off shot guns and snorted
cocaine before they entered the wrong house. 
Appellant held a girl at gunpoint while his accomplice searched the
house.  As appellant tied the girl with
tape and prepared to leave her in the bathroom, he heard gunshots
upstairs.  The accomplice shot and killed
another individual who was sleeping upstairs. 
Appellant pleaded guilty to involvement in the aggravated robbery and
agreed to testify against his accomplice to reduce the indictment.

DISCUSSION

Appellant raises eight points of error.  Combined in his first two issues, appellant
contends the trial judge erred when he admitted appellant=s juvenile conviction to enhance
punishment.  Second, appellant argues the
trial judge erred when he allowed appellant=s juvenile probation officer to
testify.  Third, appellant complains a
border patrol officer should not have testified regarding appellant=s possible drug smuggling
involvement.  Combined in his next two
points of error, appellant complains it was error for his father and stepmother
to give victim-impact testimony about his juvenile conviction for indecency
with his stepsister.  Next, appellant
complains hearsay testimony by his girlfriend should have been admitted.  Finally, appellant argues the trial judge
erred in failing to charge the jury on the definition of “criminal
responsibility.”

1.         Appellant=s Juvenile Conviction

First, we address whether the trial judge erred in allowing
the State to enhance appellant=s punishment with his juvenile conviction.  Appellant argues that this conviction
violates the United States Constitution=s “ex post facto” law.  Appellant testified that, when he pleaded
true to indecency with a child as a juvenile, the law in Texas prohibited the
State from using his conviction against him for any purpose.  However, this testimony was not completely
accurate.  








            In
1996, appellant pleaded guilty to indecency with a child and received
probation.  At the time, article 42.12,
section 5(c) of the Code of Criminal Procedure provided that if the defendant
successfully completed his deferred adjudication community supervision, he
would not receive a conviction.  See Tex. Code Crim. Proc. Ann. art. 42.12,
amended by Act of May 31, 1997, 75th Leg., R.S. Ch 667, ' 2, 1997 Tex. Gen. Laws 2250, 2251.  Also, the State could not use a defendant=s successful dismissal or discharge
of deferred adjudication to enhance his punishment under section 12.42 of the
Penal Code.  See Tex. Pen. Code Ann.
' 12.42 (Vernon 1996); see also
Scott v. State, 55 S.W.3d 593, 596B97 (Tex. Crim. App. 2001).  But, appellant did not successfully complete
his probation and obtain a dismissal or discharge.  Even in 1996, if a defendant did not
successfully complete his probation, the conviction could be used to enhance
punishment.  See Scott, 55 S.W.2d
at 596B97 (Tex. Crim. App. 2001) (finding
when a defendant completed probation the prior conviction could not be used to
enhance punishment, but not commenting on when the defendant does not complete
probation).  In appellant=s case, the State moved to revoke
appellant=s probation because he failed a drug
test and accumulated several curfew violations. 


Because appellant did not successfully complete his probation
in 1996, the State could have used the conviction to enhance his punishment,
and the State can now use the conviction to enhance his punishment.  Thus, the trial judge correctly allowed
enhancement with appellant=s prior conviction and we overrule appellant=s first two issues.

2.         Appellant=s Juvenile Probation Officer=s Testimony

Second, appellant complains the trial court erred when it
allowed appellant=s juvenile probation officer to testify during the punishment
phase regarding appellant=s conduct while on probation. 
Specifically, appellant objected to testimony by his probation officer
that appellant violated drug testing, failed to report to the officer, and
fought with family members.  Under the
Texas Code of Criminal Procedure, a trial court can admit any matter it deems
relevant to sentencing, including evidence of other crimes or bad acts.  Tex. Code Crim. Proc. Ann. art.
37.07, '
3(a).  








The trial court did not abuse its discretion by allowing the
officer to testify to appellant=s prior behavior while on probation.  The Code allows this evidence, and the trial
judge found it relevant in assessing punishment.  We overrule appellant=s third issue.

3.         Border Patrol
Officer=s Testimony

Third, appellant complains the trial judge erred again in the
punishment phase when he allowed a border patrol officer to testify that
appellant participated in drug smuggling. 

Relevant unadjudicated offenses and bad acts are admissible
in the punishment phase of trial.  See
Williams v. State, 958 S.W.2d 844, 846 (Tex. App.CHouston [14th Dist.] 1997, no pet.); Tex. Code Crim. Proc. Ann. art. 37.07,
' 3(a).  The definition of relevancy in punishment is “a
question of what is helpful to the jury in determining the appropriate sentence
in a particular case.”  Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).  The testimony by the border patrol officer
was relevant to the jury in assessing punishment.  The officer testified that while appellant
was on parole, he traveled into the United States with an individual who possessed
approximately a pound of marijuana.  When
asked about this situation, appellant gave the officer a fake name and
eventually the officer arrested both men. 
This evidence would be helpful to a jury in assessing punishment.

Nonetheless, even if it were error to allow the officer=s testimony, it was harmless because
the same evidence was admitted later through appellant.   See Leday v.
State, 983 S.W.2d 713, 717B18 (Tex. Crim. App. 1998) (holding that the improper
admission of evidence is not reversible error if the same facts are shown by
other unchallenged evidence admitted before or after the improperly admitted
evidence).  Appellant testified during
the punishment phase; he admitted his companion possessed a pound of marijuana,
and he admitted giving a fake name when questioned by police.  Therefore, any harm in allowing the earlier
testimony was cured by appellant=s testimony, and we overrule his
fourth issue.

 

 








4.         Victim-Impact
Statements

In appellant=s next two issues, he argues the trial judge erred in
allowing his father and stepmother to give victim-impact testimony regarding
appellant=s prior indecency with his stepsisterCan extraneous crime.  We agree that it was error and appellant
preserved error; however, as we explain below, we find the error harmless.

Generally, victim-impact testimony regarding extraneous
crimes is inadmissible.  See Cantu v.
State, 939 S.W.2d 627, 637 (Tex. Crim. App.
1997).  Victim-impact testimony can run a
risk of extreme prejudice and can lead to an unfair punishment hearing.[1]  See Boston v. State, 965 S.W.2d 546,
550 (Tex. App.CHouston [14th Dist.] 1997, no
pet.).  Trial courts limit victim-impact
testimony to the victim named in the indictment.  See Barletta v.
State, 994 S.W.2d 708, 713 (Tex. App.CTexarkana 1999, pet. ref=d); Cantu, 939 S.W.2d at 637B38 (holding the admission of
victim-impact testimony was error, but the admission was harmless).

In 2000, appellant pleaded guilty to indecency with a child;
the child was his six-year-old stepsister. 
Here, before the appellant=s father and stepmother testified to
the impact the prior crime had on their daughter and their other children,
appellant=s counsel properly objected.  As noted earlier, the trial judge incorrectly
overruled the objection and allowed the testimony.








But, even though this was error, this Court is required to
disregard any errorCexcept for constitutional errorCthat does not affect appellant=s substantial rights.  Tex. R. App. P. 44.2(b).  Constitutional error is Aan error that directly offends the
United States Constitution or the Texas Constitution without regard to any
statute or rule that might also apply.@ 
Alford v. State, 22 S.W.3d 669, 673 (Tex. App.CFort Worth 2000, pet. ref=d). 
Constitutional error is only present when a ruling is constitutionally
requiredCnot when a trial judge merely
misapplies the rules of evidence.  Id.  Thus, erroneously admitted victim-impact
testimony does not amount to constitutional error. 

The correct inquiry then, becomes whether the defendant=s substantial rights were violated
and whether appellant=s punishment was affected by the judgment. King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  “A substantial right is violated when the
error made the subject of the appellant=s complaint had a substantial and
injurious effect or influence in determining the jury=s verdict.”  Id. (citing Kotteakos
v. U.S., 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)).








Here, several factors are present that, when considered
together, prevent this error from being a violation of appellant=s substantial rights.  First, the jury would likely assume, even
without hearing testimony from the parents, the impact and trauma this had on
the girl and the rest of the family. 
Second, several other extraneous crimes were mentioned throughout the
trial.  Appellant admitted that he had
(1) used narcotics since he was twelve, (2) violated curfew while on probation,
(3) cleansed his system before every probation meeting to pass narcotics
testing, (4) used narcotics while imprisoned in juvenile jail, (5) fought while
in juvenile jail, (6) failed to register as a sex offender, (7) traveled into
the United States from Mexico with a companion who possessed one pound of
marijuana, (8) lied to the border patrol officer about his identity when the
two men were arrested, and (9) been involved in four fights while in jail for
this offense.  With so many extraneous
offenses, it is not surprising that nearly half of appellant=s ninety-six pages of testimony
relates to previously committed offenses. 
The remaining pages focus on the offense at hand.[2]  Third, in the State=s closing argument, the prosecutor
did not emphasize the impact the indecency with a child had on the family.  The State did mention appellant was
responsible for molesting a six-year-old-girl, but the State did not revisit
the impact this had on the family or the victim.[3]


Fourth, from a juror=s perspective, the primary offense
was egregious.  The evidence shows
appellant admitted he held an innocent girl at gun point as his accomplice
searched the house for cash and narcotics that the appellant and the accomplice
took cocaine before committing this crime, and that appellant knew his
accomplice could commit murder.

With the overwhelming evidence in the case, and the other
extraneous offenses, we do not find that the erroneous admission of the
victim-impact testimony affected the jury=s assessment of punishment.  See Boston v. State, 965 S.W.2d 546,
550 (Tex. App.CHouston [14th Dist.] 1997, no pet.) (holding although the admission of victim-impact testimony
was error, it was harmless in light of the strength of evidence against the
defendant).  In short, even if the trial
judge erred in allowing the victim-impact testimony of the parents, the error
does not call for reversal, and we overrule appellant=s fifth and sixth issues.

5.         Hearsay
Statement of Girlfriend

Next, appellant argues that hearsay by a defense witness
should have been admitted in evidence. 
Elaina Tumlinson, the mother of appellant=s child, was home the evening of the
offense.  She testified that appellant
and the accomplice returned to her house after the crime.  Appellant was upset, and when she asked him
whether someone had been shot that night, she testified, “Justin told me that
Roger said that he didn=t shoot anybody.  He
just shot in the air or at the floor.”[4]  For two reasons, we disagree that this
statement should have come in.

First, appellant acknowledges that this statement is hearsay,
yet he fails to show us why it is admissible. 
He cites us to no exceptions that apply to the statement. 

Second, even if appellant could overcome the hearsay
obstacle, this testimony was cumulative as to appellant=s state of mind.  See Willover v. State, 38 S.W.3d 672,
684 (Tex. App.CHouston [1st Dist.] 2000, no
pet.).  Appellant himself testified he
was not certain his accomplice shot a man. 
He heard gun shots upstairs but did not see what happened.  However, appellant was “pretty sure” that his
accomplice shot someone.  When a trial
judge excludes cumulative evidence, it is harmless error.  See Blalock v. State, 728 S.W.2d 135
(Tex. App.CHouston [14th Dist.] 1987, writ ref=d). 
We overrule appellant=s seventh issue. 

6.         Jury Charge

Finally, appellant argues the trial judge erred by not
including a definition of  “criminal responsibility” in the jury
charge.  A statutory definition exists
for criminal responsibility and appellant timely objected.  For the reasons explained below, we agree the
case must be reversed on this issue. 








“A trial court=s charge should include a definition
of any legal phrase that the jury must necessarily use in properly resolving
that issue.”  Nguyen v. State, 811
S.W.2d 165, 167 (Tex. App.CHouston [1st Dist.] 1991, writ ref=d). 
“If a phrase, term, or word is statutorily defined,
the trial court must submit the statutory definition to the jury.” Moore v.
State, 82 S.W.3d 399, 408 (Tex. App.CAustin 2002, pet. ref=d); see also Alexander v. State,
906 S.W.2d 107, 111 (Tex. App.CDallas 1995, no pet.).  Here, appellant properly objected and informed the trial
court that the jury charge did not include a
definition of “criminal responsibility.” 
A definition for “criminal responsibility” exists.[5]
 See Tex. Pen. Code Ann. ' 7.02(a).  Therefore, the trial judge erred in not
including the definition in the charge.

Because appellant properly objected, we must determine
whether harm resulted from the error.  See
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984); see also Arline v. State, 721
S.W.2d 348, 351B53 (holding “any harm” not “some harm” will mandate a
reversal if the appellant preserved error). 
If the appellant properly objected and if the error harmed the
appellant, we must reverse.  See
id.  We are to look to the entire
recordCnot just the jury chargeCfor evidence of harm.  See Arline, 721 S.W.2d at 351.








When a definition is not included in the jury charge, it is
assumed that “the jury would consider the commonly understood meaning in its
deliberations.” Olveda v. State, 650
S.W.2d 408, 409 (Tex. Crim. App. 1983) (holding the common definition of “in
the course of committing theft” is more restrictive than the statutory
definition, and the lack of a definition favored appellant); see also Nejnaoui v. State, 44 S.W.3d 111, 120 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (holding the definition of “conduct”
is neither complex nor unusual and the absence of a definition could not have
confused the jury).  Here, “criminally
responsible” does not have a common definition every jury member could easily
agree upon.  One juror may define it as “arrested
and convicted,” while another could define it as “participating in any way”
with the crime. 

The ambiguous term “criminally responsible” is mentioned
twice in the jury charge.  The jury
charge included in part the following:

Therefore, if you find and believe beyond a reasonable
doubt that the defendant committed an extraneous crime or bad act or could be
held criminally responsible for an extraneous crime or bad act, then you may
consider such evidence in assessing the defendant=s punishment.  However, if you have a reasonable doubt that
the defendant committed an extraneous crime or bad act or could be held
criminally responsible for an extraneous crime or bad act, then you may not
consider such evidence in assessing punishment. 

Here, the jurors needed the statutory definition to accurately assess
appellant=s possible involvement in narcotics
smuggling.  Appellant testified he did
not know his companion had a pound of marijuana in his bag.  However, the border patrol officer testified
that both men acted suspiciously, and that appellant presented a false identity
to him.  Because we cannot say what
impact a definition might have had on the jury, we find harm existed.  The jury could have found appellant
criminally responsible for the narcotics smuggling and given appellant a
seventy-five-year incarceration sentence, or the jury could have found
appellant not criminally responsible and possibly given him less than
seventy-five years.  We find the trial
court erred by not including the definition, and appellant was harmed when the
jury did not receive a definition of “criminally responsible.”  This error requires that we reverse appellant=s punishment and remand for a new
punishment hearing.

CONCLUSION








In conclusion, we overrule appellant=s first seven issues related to his
trial below.  However, we sustain his
eighth issue because the trial judge did not include a definition for “criminal
responsibility” in the jury charge.  Therefore,
we affirm the part of the trial court=s judgment reflecting appellant=s conviction, but reverse and remand
for a new punishment hearing.

 

 

/s/        Wanda McKee
Fowler

Justice

 

Judgment rendered and Opinion filed February 27, 2003.

Panel consists of Chief Justice Brister, Justices Hudson and Fowler.

Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The Texas
Court of Criminal Appeals has stated the following:   

The danger of unfair prejudice to a defendant inherent
in the introduction of Avictim impact@
evidence with respect to a victim not named in the indictment on which he is
being tried is unacceptably high.  The
admission of such evidence would open the door to admission of victim impact
evidence arising from any extraneous offense committed by a
defendant.  Extraneous victim impact
evidence, if anything, is more prejudicial than the non-extraneous victim
impact evidence found by this Court to be inadmissible in Smith, supra.  We hold that such evidence is irrelevant
under Tex. R. Evid. 401 and therefore irrelevant in the context of the special issues
under Art. 37.071.

    

Cantu
v. State, 939 S.W.2d
627, 637 (Tex. Crim. App. 1997). 





[2]  The border
patrol officer and appellant’s juvenile probation officer also testified for
the State to the prior crimes appellant committed.  The testimony of these two witnesses
comprised about twenty-two pages out of the two hundred seventy-four pages of
witness testimony presented by the State.





[3]  Throughout
sixteen pages of closing argument, the State only mentioned the indecency with
the child or the parents’ testimony in the following way: 

 

His own
mother sat up there and said that he has told his share of lies and that he
could be manipulative, and that she got so fed up with him and at wits end that
she finally gave up on him and kicked him out on a number of occasions.  His biological father said the same thingCthis is this person’s parents telling you that he is a
liar and a manipulator. ... What you know about him is that he is a sex
offender.  He was convicted for the
molestation of a six-year-old little girl, his sister.  He’s a sex offender at the age of 16. ... He’s
doing drugs, he’s defiant, his probation officer
testified that he minimized his involvement. 
He blamed the  little
girl and his stepmother for that, if you think back to her testimony.





[4]  This piece of
the testimony was developed by an offer of proof by the defense.





[5] 
The penal code states the following definition for “criminal
responsibility for conduct of another:”

            (a)        A person is criminally responsible for
an offense committed by the conduct of another if:

 

(1)        acting with the kind of culpability required for the offense,
he causes or aids an innocent or nonresponsible person to engage in conduct
prohibited by the definition of the offense;

 

(2)        acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense; or 

 

(3)        having a legal duty to prevent
commission of the offense and acting with intent to promote or assist its
commission, he fails to make a reasonable effort to prevent commission of the
offense.   

Tex. Pen. Code Ann. ' 7.02(a).