NO. 07-02-0436-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 13, 2003


______________________________



SIP CAMPBELL, individually


 and d/b/a SIPS OIL AND GAS, 



 Appellant


v.



MIKE CAMPBELL, 



 Appellee

_________________________________



FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 33,745; HON. WILLIAM D. SMITH, PRESIDING


_______________________________





MEMORANDUM OPINION



_________________________________



Before JOHNSON, C.J., and QUINN AND REAVIS, JJ.

 Appellant Sip Campbell, individually and d/b/a Sips Oil and Gas (Sips) appeals from
a post-answer default judgment awarding Mike Campbell (Campbell) damages to
recompense personal injuries. The two issues before the court involve whether 1) the trial
court erred by stating in the judgment that Sips appeared pro se, announced ready for trial,
did not contest liability, waived a jury trial, and stipulated to damages and 2) the evidence
was factually sufficient to support the damages awarded. We affirm.

Background


 The record reflects that Campbell sued Sips and Keith Wilson for damages
sustained after Campbell was struck in the skull by the head of a sledge hammer. Both
defendants answered. When the suit came for trial, only Campbell appeared, however. 
The trial court asked aloud if the defendants or anyone representing them were present,
and hearing no response, it directed Campbell to proceed with the trial. He did so by
describing the events which gave rise to his injury. So too did he describe the extent of
his damages; the latter were compiled in a summary which the trial court received into
evidence. According to that summary, the damages totaled $152,496.40.

 The trial court signed, on April 24, 2002, a judgment adjudicating that Campbell
recover from Sips the sum of $152,496.40 and court costs. Nothing was said about pre
or post judgment interest. Nor did the trial court 1) mention Wilson or his liability, if any,
2) include a Mother Hubbard Clause denying all other relief or claims which it did not
grant, or 3) attribute any portion of the total damage award to any element of damage. 

 Over five months passed before Campbell filed a pleading on October 3, 2002, non-suiting Wilson. On that very same day, October 3rd, the trial court signed an order
directing "that all claims by . . . Campbell against . . . Wilson, individually are non-suited." 
Twenty-one days then passed before Sips filed his "Notice of Restricted Appeal." Therein,
he stated his desire to "appeal from the judgment rendered against [him] . . . on April 24,
2002."


Preliminary Issue - Restricted Appeal


 Sips attempts to prosecute this matter as a restricted appeal. To be entitled to do
so, he must establish, among other things, that he did not file a timely notice of appeal. 
Tex. R. App. P. 30. Here, the record discloses that Campbell sued Sips and Wilson. 
However, the judgment entered on April 24, 2002, neither mentioned Wilson nor contained
a Mother Hubbard clause. (1) Nor did it purport to adjudicate, in any way, form or fashion,
his purported liability to Campbell. Given this, it was not final for purposes of appeal. 
Fisher v. P.M. Clinton Intern. Investigations, 81 S.W.3d 484, 486 (Tex. App.-Houston [1st
Dist.] 2002, no pet.) (stating that a judgment is not final if it fails to adjudicate the claims
against all parties). Nor did it become final until Campbell non-suited his claims against
Wilson on October 3, 2002. At that point all claims against all the defendants were
disposed of in one way or another.

 Next, one generally has 30 to 90 days to appeal from a final judgment. Tex. R. App.
P. 26.1(a). By filing his notice of appeal within 30 days of October 3rd, Sips' notice was
timely under Rule 26.1(a). Tex. R. App. P. 30. Thus, he cannot prosecute this matter as
a restricted appeal, and given that his notice was timely, we treat the appeal as we would
any other normal, unrestricted appeal. 

Issue One - Error in the Judgment's Recitals


 Through his first issue, Sips contends that the trial court "erred in its Final Judgment
by ruling that [he] appeared pro se and announced ready for trial, . . . did not contest
liability and waived [his] right to a jury trial and by further ruling that the damages were
based on stipulations . . . ." These purportedly warrant the reversal of the judgment. We
disagree and overrule the issue.

 Regarding the allegation that the parties waived their right to a jury trial, we find the
recital to be correct. Sips did not appear at trial. According to Rule 220 of the Texas
Rules of Civil Procedure, the "failure of a party to appear for trial shall be deemed a waiver
by him of the right to trial by jury." So, Sips waived his right to a jury trial.

 As to the other recitals mentioned, we do indeed find them to be inaccurate. Again,
Sips did not appear pro se at trial and announce ready. Nor did he stipulate to any
damages. He also contested liability by filing a general denial. Yet, before the judgment
may be reversed, we must conclude after perusing the entire record that these errors
either caused the rendition of an improper judgment or prevented the appellant from
properly presenting his case on appeal. Tex. R. App. P. 44.1(a)(1) & (2). In making this
determination, we initially note that Sips addressed neither prong of Rule 44.1(a) in his
brief. See Goode v. Shoukfeh, 915 S.W.2d 666, 673 (Tex. App.-Amarillo 1996) aff'd, 943
S.W.2d 44 (Tex. 1997) (noting that the appellant did not claim or attempt to show harm and
that without such a showing the judgment could not be reversed). Additionally, we do not
see how the inaccurate recitals may have hampered his ability to present his case on
appeal. So, we cannot say that the circumstances before us fit within the scope of Rule
44.1(a)(2).

 As to the other prong of Rule 44.1(a), whether the inaccurate recitals probably
caused the rendition of an improper judgment depends upon whether they affected the
outcome. Simply put, if they make no difference to or have no impact upon the actual
adjudication of the rights involved they cannot be deemed harmful or sufficient to warrant
reversal of the judgment. We find that to be the situation here. Sips may have filed an
answer but he did not appear at trial. (2) However, Campbell did appear and offered
testimony and exhibits explaining the cause and nature of his injury. Moreover, Sips does
not contend that the evidence presented by Campbell failed to establish his liability. (3) Next,
while there may not have been any stipulation regarding damages, Campbell nonetheless
presented evidence and exhibits in effort to show himself entitled to them. In sum, we
cannot see from the appellate record before us how the inaccurate recitals affected the
outcome or induced the trial court to adjudicate the rights involved in the manner that it did. 
So, reversal is unwarranted. 

Issue Two - Factual Sufficiency of the Evidence


 Next, Sips argues that the "amount of damages awarded was excessive and the
evidence presented by the Appellee in support of his damages was factually insufficient
. . . ." We overrule the issue.

 The act of Sips in failing to appear for trial constituted a post-answer default. 
However, such a default does not constitute an abandonment of the previously filed
answer or an implied confession of any issue. Stoner v. Thompson, 578 S.W.2d 679, 682
(Tex. 1979); Texas Dept. Pub. Safety v. Steele, 56 S.W.3d 352, 353 (Tex. App.-Beaumont
2001, no pet.). Nor does it relieve the plaintiff from proving his case. Id. So, to the extent
that Campbell sought damages he was obligated to tender that quantum of evidence
sufficient to support any award that he may have received from the factfinder. 

 Here, and as evinced from the summary tendered to the trial court, Campbell sought
damages for past and future medical expenses, past and future pain and suffering, past
and future physical impairment, and past and future mental anguish. Furthermore, the trial
court awarded him $152,496.40. However, it did not specify how that sum was to be
divided between medical expenses, pain and suffering, physical impairment, or mental
anguish. Nor does the record disclose that Sips asked the trial court to execute findings
of fact or conclusions of law illustrating how the sum was to be divided among the various
elements of damage sought by Campbell. (4) Furthermore, in attacking the total award, Sips
does not assert that the evidence was insufficient to sustain an award for past and future
physical impairment or past and future pain and suffering. Nor does he suggest that the
evidence would not have permitted the trial court to attribute the entire award to those
elements. And, therein lies the problem. To successfully challenge a multi-element
damage award on appeal, the appellant must address all of the elements and illustrate why
the evidence is insufficient to support the entire award. Golden Eagle Archery Inc. v.
Jackson, No. 01-0007, 2003 WL 22100919 (Tex. September 11, 2003); Norfolk Southern
Rwy. Co. v. Bailey, 92 S.W.3d 577, 583-84 (Tex. App.-Austin 2002, no pet.); Brookshire
Bros., Inc. v. Lewis, 997 S.W.2d 908, 921-22 (Tex. App.-Beaumont 1999, pet. denied);
Price v. Short, 931 S.W.2d 677, 688 (Tex. App.-Dallas 1996, no writ). And, should he fail
to address any potential element of the award, (e.g. should he attack only medical expense
when damages for pain and suffering were also sought), that results in waiver of the
challenge. Id. So, because Sips did not attack each potential element of the damage
award, he did not preserve his claim of error. Brookshire Bros., Inc. v. Lewis, 997 S.W.2d
at 921-22.

 Accordingly, the judgment is affirmed.


 Brian Quinn

 Justice 


 
1. Through a Mother Hubbard clause, the trial court denies all relief which it did not expressly grant. 
It is used as indicia signifying that the judgment is final. Reagan v. Marathon Oil Co., 50 S.W.3d 70, 74-76
(Tex. App.-Waco 2001, no pet.).
2. Sips does not suggest that he was denied prior or timely notice of the trial.
3. Sips does argue in his second issue that the evidence underlying the damage award was factually
insufficient. Though we address that matter elsewhere in our opinion, we do note at this time the absence
of any suggestion that the supposed evidentiary deficiency was somehow caused or affected by the
inaccurate recitals in the judgment. Nor does our own review of the record illustrate a link between the
recitals, the quantum of evidence presented at trial, or the amount of damages awarded in the judgment. 
 
4. It may well be that the trial court simply adopted Campbell's summary and intended to divide the
award among the respective elements of damage in the manner desired by Campbell. Or, it may be that
the trial court opted not to award him damages for past and future mental anguish but instead doubled the
amount attributable to past and future physical impairment. Or, it could be that the trial court opted not to
award Campbell anything other than damages for past and future pain and impairment; indeed, his having
suffered a broken zygomatic arch upon being hit with a sledge hammer, his current inability to lift more than
20 pounds without suffering neck pain, his inability to participate in activities that put pressure on his spine,
his continuous headaches, and his having continued difficulty with his arm and shoulder may justify a
factfinder awarding $150,000 for those elements alone. To say which the trial court did or what it intended,
though, would be mere speculation on our part without the benefit of findings of fact. 



ascript">
 if( bInlineFloats )
 {
 document.write( '' );
 document.write( WPFootnote1 );
 document.write( '
Close' );
 document.write( '' );
 }

 and sentenced to confinement in the Lubbock County Jail for
365 days. Appellant’s single issue on appeal is whether the trial court erred in denying her
motion to suppress her statements made while being illegally detained. We reverse and
remand. 
Background
          At the suppression hearing, Officer Brady Lewis, Lubbock Police Department,
testified that, on May 9, 2007, he observed a white SUV with four occupants driving slowly
through a high crime area at approximately 12:45 a.m.


 He followed the SUV until he
paced its speed at forty miles per hour in a thirty-five mile per hour speed zone, at which
point he stopped the SUV for speeding.



           As Officer Lewis approached the SUV, he had decided that his investigation would
“go to something further” because the SUV had been in a high crime area and contained
four occupants. When he approached the vehicle, Robert Stevens, the driver, had already
retrieved his driver’s license and proof of insurance. Officer Lewis testified this concerned
him.


 He also observed that the driver was “real nervous”–fidgeting around inside the SUV. 
After having Stevens exit the SUV, Officer Lewis conducted a pat-down for officer safety
because he was “real nervous” and “they were coming from a high crime area, and a lot
of prostitution and narcotics involves weapons.” No weapons were located. 
          Officer Lewis then walked Stevens back to his patrol car, placed him in the
backseat, and asked if there was anything he needed to know about in the SUV. Stevens
responded, “No.” The officer then asked him for consent to search the SUV and Stevens
refused. At that moment, Officer Lewis “didn’t know exactly what they were up to, but [he]
knew something was out of the ordinary.” Based upon these circumstances, Officer Lewis
decided to detain Stevens and the other occupants while he called the K-9 Unit and
requested a dog to search for drugs.
          Officer Lewis testified that, at this point, Appellant had not given him any reason for
suspicion. Nevertheless, he removed her and the other passengers from the SUV and
then questioned each as to their activities, identities, and the SUV’s contents. Appellant
was questioned twice regarding her identity and she responded with incorrect information.
           Approximately ten minutes later, a drug-sniffing canine arrived and alerted to the
vehicle. Despite the alert, no drugs were found in the SUV following a search. While
searching the SUV, however, Officer Lewis discovered Appellant’s identification
information. When he ran her name, he identified three outstanding warrants and placed
her under arrest. No warning or traffic citation was issued to the driver. Appellant was
charged with Failure to Identify, a Class A Misdemeanor and subsequently convicted
following a jury trial. This appeal followed.
                                                            Discussion
          Appellant asserts the trial court erred by not suppressing her statements made while
being illegally detained. She contends Officer Lewis improperly prolonged the traffic stop
in order to initiate an investigation for drugs based upon less than articulable facts
sufficient to support a reasonable suspicion warranting her continued detention.


 The
State asserts that Officer Lewis had reasonable suspicion to conduct an investigation for
drug-related offenses because the SUV had been observed driving slowly through a high
crime area and the driver was “extremely nervous” and “fidgeting around and reaching
around [inside] the vehicle” after being stopped for speeding. 
          I.        Standard of Review
          A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion, 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. 
Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial court’s fact
findings are based on an evaluation of witness credibility or demeanor, almost total
deference is given to its factual determinations supported by the record. St. George v.
State, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007). However, on questions of mixed law
and fact that do not turn on the trial court’s evaluation of witness credibility and demeanor,
we conduct a de novo review. Amador, 221 S.W.3d at 673. 
           When, as here, no findings of fact were requested nor filed, we review the evidence
in the light most favorable to the trial court’s ruling and assume the trial court made implicit
findings of fact supported by the record. See State v. Ross, 32 S.W.3d 853, 855-56
(Tex.Crim.App. 2000). Whether the totality of the circumstances is sufficient to support an
officer’s reasonable suspicion is a legal question that we review de novo. See Madden v.
State, 242 S.W.3d 504, 517 (Tex.Crim.App. 2007); Lopez v. State, 223 S.W.3d 408, 415
(Tex.App.–Amarillo 2006, no pet.). 
          II.       Traffic Stops
          For Fourth Amendment purposes, a traffic stop is a seizure and must be
reasonable. Davis v. State, 947 S.W.2d 240, 243, 245 (Tex.Crim.App. 1997). Both the
driver and any passengers are considered seized within the meaning of the Fourth
Amendment and may challenge the legality of the stop and the length and scope of their
detention. Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 2406-07, 168 L.Ed.2d 132
(2007). 
          A traffic stop is reasonable if the police officer was justified in making the stop and
his actions during the stop were confined in length and scope to that necessary to fulfill the
purpose of the stop. Kothe v. State, 152 S.W.3d 54, 63 (Tex.Crim.App. 2004). Actions an
officer may take within the scope of investigation attendant to a traffic stop include
requesting identification, proof of insurance, and vehicle registration; checking outstanding
warrants; confirmation of vehicle registration; and asking about the purpose of the trip and
intended destination. Id.; Strauss v. State, 121 S.W.3d 486, 491 (Tex.App.–Amarillo 2003,
pet. ref’d). An officer may approach not only the driver but passengers for this information. 
Duff v. State, 546 S.W.2d 283, 286 (Tex.Crim.App. 1977). However, “[a]bsent reasonable
suspicion, officers may conduct only consensual questioning of passengers in a vehicle.” 
St. George, 237 S.W.3d at 726 (citing Florida v. Bostick, 501 U.S. 429, 435, 111 S.Ct.
2382, 115 L.Ed.2d 389 (1991).


 
          Although no rigid time limitation exists on its length, a traffic stop is temporary and
may last no longer than necessary to effectuate its purpose. Kothe, 152 S.W.3d at 63-64,
65 n.43. Once its purpose has been satisfied, the stop may not be used as a “fishing
expedition for unrelated criminal activity.” Davis, 947 S.W.2d at 243 (quoting Ohio v.
Robinette, 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996)(Ginsberg, J.,
concurring)). 
          After an officer has validly stopped a vehicle for a traffic offense, the officer may
conduct a brief investigative detention, or “Terry stop,” of the occupants of the vehicle when
he has a reasonable suspicion to believe that the occupant is involved in criminal activity. 
The reasonableness of the temporary detention must be examined in terms of the totality
of the circumstances and will be justified when the detaining officer has specific articulable
facts, which, taken together with rational inferences from those facts, lead him to conclude
that the person detained actually is, has been, or soon will be engaged in criminal activity. 
See Balentine, 71 S.W.3d at 768. If during a valid traffic stop the officer develops
reasonable suspicion that the detainees are engaged in other criminal activity,


 prolonged
or continued detention is justified. Davis, 947 S.W.2d at 244. See Haas v. State, 172
S.W.3d 42, 52 (Tex.App.–Waco 2005, pet. ref’d); Perales v. State, 117 S.W.3d 434, 439
(Tex.App.–Corpus Christi 2003, pet. ref’d); McQuarters v. State, 58 S.W.3d 250, 256
(Tex.App.–Fort Worth 2001, pet. ref’d). 
          In Robinette, the U.S. Supreme Court held that a continued detention and request
to search a detainee's vehicle following a traffic stop was reasonable, where consent was
given, even though no circumstances were noted that would have constituted reasonable
suspicion of other criminal activity. See Robinette, 117 S.Ct. at 420-21. By contrast, in
Davis, the Court of Criminal Appeals found the officers' conduct unreasonable where
officers nevertheless detained the vehicle, and thus its occupants, after the detainee
refused to consent to a search of his car, and sufficient time to effectuate the purpose of
the original detention had elapsed. See Davis, 947 S.W.2d at 246. We interpret Davis and
Robinette to mean that an officer may request consent to search a vehicle after a traffic
stop but may not detain the vehicle or its occupants if such consent is refused unless
reasonable suspicion of some criminal activity exists. In other words, if a valid traffic stop
evolves into an investigative detention of other criminal activity (such as possession of a
controlled substance) so that a canine sniff can take place, reasonable suspicion is
required to prolong the detention and refusal to consent to search does not, in and of itself,
establish that requirement. Green v. State, 256 S.W.3d 456, 462 (Tex.App.–Waco 2008,
no pet.) (collected cases cited therein); McQuarters, 58 S.W.3d at 256 (olfactory inspection
by police dog trained to detect the odor of illegal drugs requires a reasonable suspicion that
the vehicle contains narcotics).
            The burden is on the State to elicit testimony showing sufficient facts to create a
reasonable suspicion. Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001).


 In our
determination of whether reasonable suspicion existed for prolonging this traffic stop, we 
give due weight not to the officer’s inchoate and unparticularized suspicion or “hunch,” but
to the specific reasonable inferences that he was entitled to draw from the facts in light of
his experience. See Davis, 947 S.W.2d at 242. Any investigative detention that is not
based on reasonable suspicion is unreasonable and violates the Fourth Amendment. Id.
           III.      Continued Detention
          Appellant asserts that Officer Lewis’s drug investigation was not justified by the
traffic stop for speeding and her prolonged detention was illegal because the officer lacked
any reasonable suspicion that she, or anyone else in the SUV, was engaged in any illegal
activity when he initiated the drug investigation. She contends the SUV being slowly driven
through a high crime area late at night and the driver’s nervousness after having been
stopped by the police for speeding were insufficient to create reasonable suspicion to
justify prolonged detention for an unrelated drug investigation. As a result, she asserts that
all her statements made to Officer Lewis after he radioed for the drug-sniffing canine and
removed her from the SUV were inadmissible because her detention was illegal.
          Although the time of day and the level of criminal activity in an area may be factors
to consider in determining reasonable suspicion, they are not suspicious in and of
themselves; Hudson v. State, 247 S.W.3d 780, 786-87 (Tex.App.–Amarillo 2008, no pet.);
Green, 256 S.W.3d at 462, and that detainees were seen or found in a high crime area
alone does not warrant reasonable suspicion. Gurrola v. State, 877 S.W.2d 300, 303
(Tex.Crim.App. 1997); Amorella v. State, 554 S.W.2d 700, 701 (Tex.Crim.App. 1977). 
Neither does driving slower than the posted speed; Viveros v. State, 828 S.W.2d 2, 3
(Tex.Crim.App. 1992); Shaffer v. State, 562 S.W.2d 853, 854-55 (Tex.Crim.App. 1978),
nor nervousness; Green, 256 S.W.3d at 462; LeBlanc v. State, 138 S.W.3d 603, 608 n.6
(Tex.App.–Houston [14th Dist.] 2004, no pet.), by themselves, warrant reasonable
suspicion.
          Officer Lewis testified at the hearing that when he stopped the SUV for speeding 
he had already decided the traffic stop would evolve into something more because the
SUV was coming from a high crime area. Significantly, however, he did not observe any
activity prior to the stop that would indicate that the SUV’s occupants might have engaged
in any illegal activity such as stopping near a known drug house or drug-dealing location,
leaving the SUV to interact with anyone, or engaging in any “hand-to-hand” activity with
anyone in the neighborhood. In fact, despite the SUV’s presence in the area, he did not
witness any of the SUV’s occupants engage in any activity other than driving slowly. 
          Officer Lewis also testified he believed he had reasonable suspicion to believe that
the driver had engaged in illegal activity because the driver was nervous. A number of
courts have observed that nervousness is of minimal probative value, given that many, if
not most, individuals can become nervous or agitated when detained by police officers. 
See Deschenes v. State, 253 S.W.3d 374, 383 n.10 (Tex.App.–Amarillo 2008, pet. ref’d)
(collected cases cited therein); McQuarters, 58 S.W.3d at 257-58 “(nervousness is a weak
indicator of hidden narcotics”). 
          That the combination of these two events resulted in less than reasonable suspicion
is also evidenced by Officer Lewis’s own testimony. Prior to calling the K-9 Unit, he was
unsure whether the SUV’s occupants had engaged in any illegal activity. He testified that
he “didn’t know it was drugs. I mean, I just knew that something was out of the ordinary.”


 
Nevertheless, he prolonged their detention to launch a new investigation into a possible
drug-related offense and called the K-9 Unit. Thereafter, he proceeded to engage in a
fishing expedition to determine whether there were drugs in the SUV–removed the
passengers from the vehicle, and then questioned them as to their activities, identity, and
the SUV’s contents.
          Officer Lewis’s suspicion that “something was out of the ordinary” was nothing more
than an inarticulate hunch or suspicion–insufficient for a temporary detention. Talbert v.
State, 489 S.W.2d 309, 311 (Tex.Crim.App. 1973).


 When he decided to conduct a drug
investigation and called for the drug-sniffing canine, the purpose and focus of the traffic
stop was impermissibly altered because he lacked any specific articulable facts, which,
when combined with rational inferences from those facts, would create a reasonable
suspicion sufficient to continue the detention and prolong the traffic stop for purposes of
conducting a drug investigation. 
          This is particularly so regarding Appellant. Officer Lewis testified he had no reason
to suspect Appellant when she was removed from the SUV in preparation for the arrival of
a drug-detecting dog and then repeatedly questioned. Detaining Appellant for further
questioning pending the arrival of the drug-sniffing dog went beyond the scope of the stop
and unreasonably prolonged her detention. See St. George v. State, 237 S.W.3d 720, 726
(Tex.Crim.App. 2007).
          In St. George, a driver was stopped by police because he had an inoperative license
plate light. Id. at 722. In response to the officers’ request for identification, the driver
produced his driver’s license. The passenger responded that, although he had a driver’s
license, he did not have it with him and gave a false name and date of birth. The driver’s
license and warrant checks came back clear and the officers issued a warning. While one
officer issued the warning, a second officer began questioning the passenger regarding his
identity and learned his true name. Upon running the passenger’s true name for a warrant
check, the officers discovered the passenger had outstanding traffic warrants and arrested
him. During a search incident to arrest, they discovered marihuana on his person. Id.
          The Court of Criminal Appeals rejected the State’s argument that the passenger’s
misidentification coupled with his nervousness amounted to reasonable suspicion for the
passenger’s detention once the purpose for the stop had been completed. 237 S.W.3d
at 726. The St. George Court held that, when the warning was issued to the driver, the
officers had no specific articulable facts to believe the passenger was involved in any
criminal activity and, without separate reasonable suspicion, questioning the passenger
regarding his identity and checking for warrants went beyond the scope of the traffic stop
and unreasonably prolonged its duration. Id. (citing Brown v. Texas, 443 U.S. 47, 52-53,
99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). The St. George Court stated, “[b]ecause the
officers failed to show reasonable suspicion in this case, it was unreasonable for them to
continue detaining Appellant long after the warning citation was issued.” Id. at 727.
          Here, when Officer Lewis stopped the SUV for speeding, as in St. George, the legal
justification or purpose of the stop was to either warn or cite the driver for a traffic violation. 
Officer Lewis had no reasonable suspicion to conduct any other investigation based on his
hunch that “something was out of the ordinary.” Neither the SUV driving slowly through a
high crime area nor the driver’s nervousness during the stop supported any more than an
inference or suspicion, at best, that any criminal activity was afoot. When the driver
refused Officer Lewis’s request to search the SUV, he had learned nothing new that
justified prolonging their detention. At that point, it was incumbent upon him to either issue
a warning or citation to the driver for speeding. Initiating a drug-related investigation by
calling for a drug-sniffing canine and then removing the passengers from the SUV,
questioning them about their activities, identities, and the SUV’s contents impermissibly
prolonged their detention by exceeding the purpose of the traffic stop. That Officer Lewis
did not formally issue a warning or citation is of no moment.


 His testimony at the
suppression hearing indicates that pulling the SUV over for a traffic violation was a pretext
for finding out what the occupants were “up to,” and his practice was to issue only a verbal
warning if the speeding violation was for less than ten miles per hour in excess of the
posted speed limit. Here, the SUV exceed the posted speed limit by only a few miles per
hour and the driver ultimately received no warning or citation for speeding. 
          Because reasonable suspicion for the drug-related investigation was lacking in this
case, it was unreasonable for Officer Lewis to continue detaining Appellant after he
impermissibly altered the purpose of the stop, expanded its scope, and prolonged
Appellant’s detention longer than necessary to effectuate the traffic stop’s original purpose. 
Accordingly, we find the trial court erred in denying Appellant’s motion to suppress.
          IV.      Harm Analysis
          Having found error, we must conduct a harm analysis to determine whether the error
calls for reversal of judgment. Tex. R. App. P. 44.2. Here, the trial court erred by denying
Appellant’s motion to suppress her statements made during the unreasonable, prolonged
detention. The evidence was subsequently admitted at trial. An investigative detention
that is not based on reasonable suspicion is unreasonable and offends the Fourth
Amendment; Davis, 947 S.W.2d at 242, rendering any subsequently discovered evidence
inadmissible as “fruit of the poisonous tree.” Segura v. United States, 468 U.S. 796, 804,
104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The error below was constitutional error and Rule
44.2(a) is applicable.
          To determine whether prejudice occurred by the introduction of Appellant’s
statements at trial, we evaluate the entire record in a neutral, impartial, and even-handed
manner, not in the light most favorable to the prosecution; Alford v. State, 22 S.W.3d 669,
673 (Tex.App.–Fort Worth 2000, pet. ref’d), and must reverse unless we determine beyond
a reasonable doubt that error did not contribute to Appellant’s conviction or punishment. 
Id. We consider the source and nature of the error, the extent it was emphasized by the
State, its probable collateral implications, the weight a juror would probably place on the
error, and whether declaring it harmless would be likely to encourage the State to repeat
it with impunity. Harris v. State, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). We do not
focus on the propriety of the outcome, but calculate as much as possible the probable
impact on the jury in light of the existence of other evidence. Wesbrook v. State, 29
S.W.3d 103, 119 (Tex.Crim.App. 2000), cert. denied, 532 U.S. 944, 121 S.Ct. 1407, 149
L.Ed.2d 349 (2001). 
          Here, Appellant was charged with the offense of failure to identify. Without her
statements made during the unreasonable detention, there is nothing else in the record
showing Appellant failed to identify herself during the traffic stop. After carefully reviewing
the record and performing the required harm analysis under Rule 44.2(a), we are unable
to determine beyond a reasonable doubt that the trial court’s denial of Appellant’s motion
to suppress her statements did not contribute to her conviction or punishment. 
Accordingly, we sustain Appellant’s single issue. 
Conclusion
          The trial court’s judgment is reversed and the cause is remanded for further
proceedings consistent with this opinion. 
    
                                                                                      Patrick A. Pirtle 

                                                                                             Justice

 



Publish.