In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00023-CR
______________________________


RENE FLORES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 228th Judicial District Court
Harris County, Texas
Trial Court No. 963443


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Rene Flores was convicted by a jury for the murder of Damon Barlow, also
known as "Blue." The jury assessed punishment at thirty-eight years' imprisonment,
and the trial court sentenced Flores accordingly. Flores appeals, raising one point of
error: that the trial court erred in including in the jury charge an instruction on
provocation. We affirm the judgment.
          The killing occurred September 23, 2003. Approximately two weeks before that
date, Flores and a person identified only as "Ronnie" attempted to broker a sale of
approximately eight pounds of marihuana to Barlow. In the course of this transaction,
Barlow and Dezavies Taylor, also known as "Tucker," met Flores and Ronnie at a fast
food restaurant along Interstate 10 in Houston.


 Flores and Ronnie were traveling in
Flores' wife's car, and Barlow and Taylor were traveling in a white Chevrolet Caprice
driven by Taylor. From the restaurant, Taylor and Barlow, and unidentified persons in
a gray Buick, followed Flores and Ronnie to Ronnie's residence, where Ronnie got the
marihuana and put it in the Caprice. Flores and Ronnie then got in the car with Barlow
and Taylor, expecting to be paid for the marihuana. Instead, Taylor drove away,
ultimately stopping—at Ronnie's instruction—at the home of Flores' mother. Flores
testified he got out of the car at his mother's house "to head her off," and when he
returned to the car, Barlow pulled a gun, ordered Ronnie out of the car, and pointed the
gun at Flores. The Caprice then sped away, with no money having been exchanged
for the marihuana. Flores' brother took Flores and Ronnie back to Ronnie's house
where they had left Flores' wife's vehicle. Flores and Ronnie, joined by Flores' wife,
then attempted to locate the Caprice and, in the process, encountered the gray Buick. 
Flores was driving his wife's car, and he pursued the Buick, but the passenger in that
car started shooting toward them. Flores testified they were shot at nine or ten times
before the driver of the Buick was able to elude them. None of the shots fired hit
Flores, his wife, or Ronnie; neither did any of the shots hit the vehicle in which they
were riding. After this incident, but before the date of the killing, Flores purchased an
SKS semiautomatic assault rifle and three boxes of ammunition.
          On September 23, 2003, Flores, using a different name and a different telephone
number, contacted Barlow and told him that he, Flores, had marihuana and asked
Barlow if he would like to buy it. Flores and Barlow arranged a meeting at another fast
food restaurant on Interstate 10. According to Flores, he arranged this meeting only
so he could get the money from Barlow for the stolen marihuana. Flores went to this
location with a friend, Jerry Thomas, in Thomas' green Toyota Camry. Thomas was
driving. Before going, however, Flores placed his SKS assault rifle in the trunk of
Thomas' car. 
          Barlow and three friends arrived at the restaurant parking lot in the white
Chevrolet Caprice, with Barlow in the front passenger seat. According to Flores, the
Caprice circled the parking lot and left. According to Anthony Onibokun, who was riding
in the back seat of the car with Barlow, they waited at the designated place for about
five minutes and, when no one showed up, they left. At any rate, when the Caprice left
the parking lot, Flores and Thomas followed it onto Interstate 10. 
          According to Onibokun, someone in a car behind them opened fire on them;
Barlow was killed, and the driver and another back-seat passenger were also shot. 
Photographs admitted into evidence showed several bullet strikes in the right front
passenger side door as well as on the trunk lid of the Caprice. Onibokun testified that
no one in the Caprice had a weapon and that no one in that vehicle fired a shot toward
the Camry. The testimony showed there was no damage to the Camry indicating it had
been involved in a shooting. 
          Flores admits in his brief before this Court that "his vehicle was chasing the
vehicle in which the deceased was a passenger." He further testified that, during this
"chase," someone in the Caprice began shooting at them. He said that, in fear and in
defense of his life, he climbed to the Camry's back seat, where he was able to access
the trunk. He retrieved his rifle from that location and fired five to seven rounds on the
Caprice. Barlow died as a result of these shots fired by Flores.
          The trial court's charge to the jury included instructions on the law of self-defense, including the duty to retreat. The court, however, limited this defense by also
instructing the jury as follows: 
You are further instructed as part of the law of this case, and as a
qualification of the law on self-defense, that the use of force by a
defendant against another is not justified if the defendant provoked the
other's use or attempted use of unlawful force, unless
 
(a)the defendant abandons the encounter, or clearly
communicates to the other his intent to do so reasonably
believing he cannot safely abandon the encounter; and 
 
(b)the other person, nevertheless, continues or attempts to use
unlawful force against the defendant. 

The charge then instructs the jury that, if it found beyond a reasonable doubt that Flores
committed some act or used some language, or a combination of both, with the intent
"to produce the occasion for shooting Damon Barlow," and if such act or words of
Flores were reasonably calculated to, and did "provoke a difficulty" wherein Barlow
attacked Flores with deadly force or reasonably appeared to Flores to "so attack
[Flores] or to be attempting to so attack [Flores]," and Flores then shot Barlow "in
pursuance of his original design," the jury should thereupon convict Flores. 
          An instruction on the issue of provocation, in answer to a defendant's claim of
self-defense, is appropriate when there is sufficient evidence (1) that the defendant did
some act or used some words which provoked the attack on him; (2) that such act or
words were reasonably calculated to provoke the attack; and (3) that the act was done
or the words were used for the purpose and with the intent that the defendant would
have a pretext for inflicting harm on the other. Smith v. State, 965 S.W.2d 509, 513
(Tex. Crim. App. 1998). "An instruction on provocation should only be given when there
is evidence from which a rational jury could find every element of provocation beyond
a reasonable doubt." Id. at 514. The evidence is to be viewed in the light most
favorable to giving the instruction. Id. An appellate court is not to decide whether the
"evidence actually established that the appellant provoked the difficulty with the intent
to harm the deceased." Id. at 519–20. Rather, such matter is for the jury.
          Flores contends "the evidence did not establish [that he] did some act or used
some words intended to and calculated to bring on the difficulty in order to have a
pretext for inflicting injury upon the deceased." The State responds that "[Flores] again
chased Barlow down the freeway, knowing he would get shot at, and then he shot at
the vehicle Barlow was riding in, ultimately killing him and injuring two other occupants." 
(Emphasis added.) The State's position is premised on its contention that, during the
incident two weeks before the alleged killing, "Barlow opened fire on the vehicle [Flores]
was riding in." However, the State fails to cite any place in the record showing that
Barlow opened fire on Flores' vehicle. Flores testified that, on that occasion, Barlow
was traveling in a white Caprice and that the person who "opened fire" on his vehicle
was the passenger in a gray Buick. He further testified he did not know the identity of
anyone in the gray Buick.
          The State cites Juarez v. State, 961 S.W.2d 378 (Tex. App.—Houston [1st Dist.]
1997, pet. ref'd), as "a situation factually similar to the one before this Court." That
case involved the killing of Manuel Molina, a gang member, by Christopher Juarez, a
rival gang member. There was testimony that Molina and others had shot at Juarez'
gang the night before. There was also testimony that Juarez and his friends said they
would "get" those responsible. On the day of the killing, Juarez and his friends did a
drive-by shooting at Molina's family's house and at a car in front of it. Molina and his
friends were in Molina's car nearby and heard the shots. When the car in which Juarez
was riding fled from Molina's family's house, Molina chased after it. There was
evidence that the car in which Juarez was riding slowed down as if to allow Molina's car
to catch up. Juarez said that, when Molina pulled his car alongside the car in which he
(Juarez) was riding, he (Juarez) presumed Molina and his friends would shoot, so he
fired his .38 caliber pistol, killing Molina. In approving the provocation instruction to the
jury, the Houston court of appeals held this evidence sufficiently raised a fact issue
about Juarez' intent to use the drive-by shooting as a pretext for drawing a rival gang
member into a scuffle and shooting him. Id. at 383.
          If the facts of the instant case were as the State presents them, there would be
some similarity. However, unlike the facts in Juarez, there is no evidence that Barlow
fired a weapon at Flores before the occasion when Flores shot and killed Barlow. 
Further, instead of the victim chasing the appellant after being provoked to do so, as
in Juarez, here Flores chased Barlow, and there was no evidence that he did so for the
purpose of provoking Barlow into shooting at him so he (Flores) could then kill Barlow. 
If it had been the people in the gray Buick that Flores chased and killed, then Flores,
like Juarez, could have "presumed" those people would shoot, and an instruction on
provocation would have been appropriate. But the State cannot simply substitute the
white Caprice and Barlow for the gray Buick and its unknown occupants. The trial
court's charge to the jury on provocation was an unwarranted limitation on Flores' right
of self-defense and was error. 
          We now turn to a harm analysis. In our review of nonconstitutional error, we are
to disregard errors, defects, irregularities or variances that do not affect substantial
rights of the accused. Tex. R. App. P. 44.2(b). A "substantial right" is affected when the
error had a substantial and injurious effect or influence in determining the jury's verdict. 
Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If,
on the record as a whole, it appears the error "did not influence the jury, or had but a
slight effect," we must conclude that the error was not harmful and allow the conviction
to stand. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          Although Flores asserts in his brief "[t]he error in this matter is of a constitutional
dimension in that it denied Appellant due process in exercising his constitutional right
to a jury trial," he offers no explanation or argument as to why this error is of
constitutional magnitude. Constitutional error, within the context of Rule 44.2(a), is "an
error that directly offends the United States Constitution or the Texas Constitution
without regard to any statute or rule that might also apply." Alford v. State, 22 S.W.3d
669, 673 (Tex. App.—Fort Worth 2000, pet. ref'd). The doctrine of provocation is
codified in Section 9.31(b)(4) of the Texas Penal Code and has its roots in common
law; it is not of constitutional dimension. 
           We conclude that the trial court's erroneous instruction did not have a substantial
and injurious effect or influence in determining the jury's verdict. There was substantial
evidence against Flores' claim of self-defense. He admitted calling Barlow to arrange
a marihuana transaction with no marihuana; he purchased an assault rifle a few days
before the killing; he admitted firing at Barlow's vehicle; there was no evidence that the
Camry in which he was riding had been involved in a shooting; Onibokun, a passenger
in the Caprice with Barlow, testified that no one in the Caprice had a gun and that no
one fired back at Flores. We conclude that the trial court's error in limiting Flores' claim
of self-defense did not influence the jury, or had but a slight effect.
          Accordingly, we overrule Flores' sole point of error and affirm the judgment.



                                                                Donald R. Ross
                                                                Justice 
 
Date Submitted:      March 9, 2006
Date Decided:         May 5, 2006

Publish